**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AXIOM INSURANCE MANAGERS AGENCY, LLC, | ) | |
| Plaintiff, | ) | No. 11 C 2051 |
| v. | ) | Hon. Amy J. St. Eve |
| INDEMNITY INSURANCE CORPORATION, RISK RETENTION GROUP, and JEFFREY COHEN | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Axiom Insurance Managers Agency, LLC ("Axiom"), filed the present lawsuit on March 25, 2011, alleging that its competitor, Defendant Indemnity Insurance Corporation, Risk Retention Group ("Indemnity"), had filed numerous frivolous lawsuits against it and had falsified financial information concerning Axiom to insurance regulators and other entities. (R. 1 at *passim*.) On May 10, 2011, Axiom filed its Second Amended Complaint ("the Complaint") (R. 21), which Indemnity now requests the Court to dismiss under Federal Rule of Civil Procedure 12(b)(6). (R. 26.) Incorporating Indemnity's arguments, Defendant Jeffrey Cohen, Indemnity's principal ("Cohen"), also moves to dismiss the Complaint. (R. 39; R. 41.) Indemnity has separately filed a motion for sanctions. (R. 59.) For reasons explained below, the Court grants in part and denies in part Indemnity's and Cohen's motions to dismiss (R. 26; R. 39), and denies Indemnity's motion for sanctions (R. 59). The Court declines to stay "Count V" of the Complaint, seeking a declaration that Axiom has not breached the Settlement Agreement,

pending the outcome of the related proceeding in the U.S. District Court for the District of Maryland. Finally, pursuant to Axiom's request (R. 49 at 13), the Court dismisses Axiom's claim for tortious interference, without prejudice.

**BACKGROUND**

In the present case, Axiom alleges that Indemnity has committed fraud on insurance regulators, such as the District of Columbia Department of Insurance, Securities and Banking ("DISB"), and insurance-rating agencies, including AM Best, to the effect that Indemnity is financially sound when it is not. (R. 21 at 4, *passim*.) It further contends that Indemnity has sued anyone who has challenged its financial condition, and alleges that Indemnity has sued Axiom on five separate occasions. (*Id.* at 8.)

The first count of the Complaint, which is for abuse of process, concerns a recent Texas lawsuit that Indemnity brought against Axiom. (R. 21 at 11.) The Complaint alleges that Indemnity "ha[d] an ulterior motive in bringing" the case, specifically "to control the market in which it competes with Axiom." (*Id.*) Axiom submits that the Texas lawsuit is frivolous. (*Id.*) The Complaint's second count is for an alleged violation of the Lanham Act. (*Id.* at 12.) Axiom contends that Indemnity's "misrepresentations to AM Best, DISB, NAIC, and prospective insureds regarding [Indemnity's] financial condition, [*sic*] constitute a violation of . . . 15 U.S.C. § 1125(a)(1)(B)." (*Id.*) The third count, which Axiom directs only at Cohen, contends that Indemnity, through Cohen, "has engaged in [*sic*] pattern of racketeering activities involving the use of United States mails and/or wires," including by (1) making false representations in its December 31, 2010, NAIC filing; (2) its May 6, 2011, letter to Axiom's brokers and to regulators; and (3) by pursuing baseless litigation against Axiom. (*Id.* at 13-14.) Finally, Axiom

brings a count alleging breach of the parties' prior settlement agreement, and also seeks a declaration that Axiom has not breached the same.[1]

On February 19, 2010—prior to Axiom's filing the present case—Axiom and Indemnity entered in an agreement "to fully and finally settle the claims asserted" in five previous cases between the parties ("the Settlement Agreement"). (R. 85 at 18-24.) "[I]n full settlement and discharge of any and all claims and potential claims between them," Axiom agreed to release Indemnity "of and from any and all actual or potential claims, demands, damages, liabilities, rights, causes of action, rights of action, . . . and remedies of each and every kind or nature whatsoever . . . and whether the same are known or unknown, anticipated or unanticipated . . . that Axiom had, may have had, or now has, based upon or arising out of any act by the IIDC Released Parties predating the execution of this Agreement, including all claims which were asserted, or could have been asserted, in the Litigation." (*Id.* at 18-19.)

On May 19, 2011, Indemnity filed the motion to dismiss that is now before the Court. (R. 26.) Indemnity argues that the February 2010 Settlement Agreement bars Axiom's claims, and further contends that, independent of the Settlement Agreement, each of Axiom's claims fails to satisfy the requirements of Federal Rule of Civil Procedure 8(a). (*Id.* at *passim*.) Cohen separately moves to dismiss the Complaint, both on the grounds submitted in Indemnity's motion to dismiss and on the basis that the Court lacks personal jurisdiction over him. (R. 39.) Indemnity has also a filed motion for sanctions. (R. 59.)

On June 10, 2011, pursuant to the parties' stipulation concerning personal jurisdiction,

---

[1] The Complaint's fourth count is for tortious interference. (R. 21 at 12-13.) On June 14, 2011, however, Axiom requested that the Court permit it voluntarily to dismiss its tortious-interference count. (R. 49 at 13.) The Court therefore dismisses that count without prejudice.

the Court withdrew Cohen's Rule 12(b)(2) motion to dismiss. (R. 47.) Cohen's Rule 12(b)(6) motion, however, remains pending. (*Id.*)

## LEGAL STANDARD

### I. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Under federal notice-pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (holding that courts accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor). Finally, "a Rule 12(b)(6) motion must be decided solely on the face of the complaint and any attachments that accompanied its filing." *Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010) (citing Fed. R. Civ. P. 10(c)).

## II. Motions for Sanctions under Rule 11

Federal Rule of Civil Procedure 11 provides that every pleading must be signed by at least one attorney of record and further states that, in "presenting to the court a pleading . . . an attorney . . . certifies that[,] to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purposes . . .; (2) the claims . . . are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support . . .; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(a),(b). The rule further provides that a party filing a motion for sanctions must do so separately from any other motion and must describe the specific conduct that it alleges violates Rule 11(b). *Id.* at (c)(2). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule[.]" *Id.* at (c)(1).

The Seventh Circuit has observed that courts "may impose Rule 11 sanctions for arguments 'that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose.'" *Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc.*, 202 F.3d 965, 968-69 (7th Cir. 2000) (quoting *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998)). The Supreme Court has instructed that Rule 11 "requires a court to consider issues rooted in factual determinations" and has explained, as an example, that, "to determine whether an attorney's prefiling inquiry was reasonable, a court must consider all the circumstances of a

case." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990).

## DISCUSSION

### I. The Court Grants Indemnity's Motion to Dismiss in Part and Denies It in Part

Indemnity argues that the Court should dismiss the Complaint on any, or all, of three grounds. Its principal argument is that the Settlement Agreement bars all of Axiom's claims. (R. 85 at 4-6; R. 86 at 1-3.) Indemnity further contends that each count of the Complaint fails to state a claim. (R. 85 at 7-14; R. 86 at 3-10.)[2] The Court addresses each of these arguments in turn.

#### A. The Settlement Agreement Does Not Foreclose Axiom's Claims

As noted, pursuant to the Settlement Agreement, Axiom released Indemnity "of and from any and all actual or potential claims. . . and remedies of each and every kind or nature whatsoever . . . and whether the same are known or unknown, anticipated or unanticipated . . . that Axiom had, may have had, or now has, based upon or arising out of any act by the IIDC Released Parties *predating* the execution of this Agreement, including all claims which were asserted, or could have been asserted, in the Litigation."[3] (R. 85 at 18-19) (emphasis added).

---

[2] Indemnity also argues that the Court should dismiss the Complaint because it fails to adequately allege diversity jurisdiction. (R. 85 at 15; R. 86 at 10.) The Court has subject-matter jurisdiction over Axiom's federal claims for violation of the Lanham Act and RICO under 28 U.S.C. § 1331, and exercises supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367 because the asserted claims form part of the same case or controversy.

[3] The Settlement Agreement defines as "the Litigation" the claims asserted in the following cases between the parties: (1) Case No. 9024646, 17th Judicial Circuit, Broward County, Florida; (2) Case No. 9054874, 17th Judicial Circuit, Broward County, Florida; (3) Case No. 09-24949, Palm Beach County, Florida, Case No. 09-24949; (4) Case No. 10-20218, U.S.D.C., S.D. FL; and (5) Case No. 09-4961 in this Court. (R. 85 at 18.)

The question whether the Settlement Agreement bars Axiom's claims, therefore, turns on whether the alleged facts giving rise to those claims predate the agreement's execution—February 19, 2010.

Indemnity contends, and Axiom does not disagree, that Illinois law governs the Court's interpretation of the Settlement Agreement. (R. 85 at 4-5; R. 49 at 2-4; R. 86 at 1-2, n.1.) "In Illinois, 'a release is a contract subject to traditional rules of contract interpretation.' 'Illinois follows the 'four corners' rule for contract interpretation,' which requires us to look to the contract itself to determine the parties' intentions." *Jackson v. City of Chi.*, No. 10-CV-2192, 2010 WL 3723911, at *2 (N.D. Ill. Sept. 15, 2010) (quoting *People ex. rel. Devine v. Time Consumer Mktg., Inc.*, 782 N.E.2d 761, 765 (Ill. App. Ct. 2002); *Clarendon Am. Ins. Co. v. 69 W. Wash. Mgmt. LLC*, 870 N.E.2d 978, 984 (Ill. App. Ct. 2007)).

Indemnity argues that the Settlement Agreements bars each and every count of the Complaint. This argument fails for the reasons explained below.

### 1. The Respective Dates of Indemnity's Alleged Conduct

Many of the Complaint's factual allegations concern actions and events that took place prior to February 19, 2010. "The History of [Indemnity]" section of the Complaint recounts alleged facts from 2004 through 2006. (R. 21 at 4-5.) The next section—"The Fictitious $47 Million Letter of Credit"—alleges that Indemnity fabricated a letter of credit in the amount of $47 million to obtain a favorable rating from the independent insurance-company-rating agency, AM Best. (*Id.* at 5-7.) The facts alleged in the section concern purported actions by Indemnity between "early 2009" and "the fourth quarter of 2009[.]" (*Id.*) The only reference to post-February 19, 2010, conduct by Indemnity is the vague assertion that, "[a]s recently as March

2011, [Indemnity] has stated in published financial statement that it was formally capitalized with the $47 million letter of credit." (*Id.* at 7.) That assertion, of course, relates to events that occurred prior to February 19, 2010.

A subsequent section—"DISB's Recent Audit—states that, in 2010, DISB reviewed Indemnity, "this time as of December 2008." (R. 21 at 9-10.) This portion of the Complaint details the alleged finding of DISB's report, as well as Cohen's written responses to the same, which were supposedly to the effect that DISB "provided a biased, dishonest and subjectively opinioned [*sic*] based report" and that the examiner "does not have relevant U.S. judicial experience to provide evidence of the technical expertise needed to opine on coverage related matters." (*Id.* at 9.) Other than Cohen's responses, which concerned DISB's report pertaining to Indemnity's pre-Settlement Agreement conduct, the only post-February 19, 2010, action referenced in this section was Indemnity's alleged August 2010 assertion that it "has and continues to reflect all assets, liability and other amounts in financial statements," which purportedly referenced the (pre-February 2010) letter of credit. (*Id.* at 10.) This, too, concerns pre-Settlement Agreement events.

Only two sections clearly allege acts by Indemnity subsequent to the Settlement Agreement. The first is one paragraph of the section, "[Indemnity's] Other Wrongful Acts," which contends that, "[o]n May 6, 2011 [Indemnity's] attorney, Alex Brown, sent 25 letters to Axiom's current and former business partners claiming that Axiom was engaged in 'illegal' conduct, and that they would be served with a subpoena." (*Id.* at 11.) The other is the section entitled "[Indemnity's] Questional [*sic*] Financial Statements," which alleges that Indemnity "did not capitalize itself with a $10 million cash infusion" and asserts that the company's "December

31, 2010 financial statements, filed with insurance regulators in Delaware and with the National Association of Insurance Commissioners ("NAIC") identify the $10 million as being on deposit in a Florida bank. (R. 21 at 7-8.)[4]

Finally, the section, "The Frivolous Lawsuits," recounts a number of lawsuits that Indemnity has filed against Axiom, but it does not specify the date of any of these actions. (*Id.* at 8.) Nevertheless, although Axiom does not allege the date on which Indemnity initiated the Texas action, in light of Complaint's characterization of the Texas lawsuit as "recent" and the Court's duty to construe all well-pleaded allegations in the light most favorable to the non-moving party, the Court draws an inference from the Complaint that Indemnity filed the Texas suit after the Settlement Agreement.

In sum, Indemnity's alleged conduct that took place after the Settlement Agreement and that entailed more than referencing pre-February 19, 2010, events consist of: (1) the May 6, 2011, letters that Indemnity's attorney sent to certain of Axiom's current and former business partners; (2) Indemnity's December 31, 2010, financial statements; and (3) the Texas lawsuit that Indemnity filed against Axiom.

**2. The Settlement Agreement Does Not Preclude Axiom's Abuse-of-Process Claim**

Axiom's first count alleges that Indemnity's lawsuit against Axiom in Texas constitutes an abuse of process. (R. 21 at 11.) As explained above, construing the well-pleaded allegations

---

[4] Further allegations in the section explain the basis for Axiom's allegations as being that Indemnity paid $30,000 in interest to the Florida bank in 2010, which makes it "likely that the $10 million in 'cash' is, at best, actually another 'letter of credit' not properly characterized as cash or surplus." (*Id.* at 7.) The last allegations do not relate to the $10 million cash infusion, at least directly, but contend that Indemnity is insolvent. (*Id.* at 7-8.)

in the light most favorable to Axiom, it is a reasonable inference that Indemnity initiated the Texas proceedings after February 19, 2010. By its explicit terms, the Settlement Agreement applies to "any act by the IIDC Released Parties *predating* the execution of this Agreement[.]" (R. 85 at 19) (emphasis added.) Axiom's February 2010 release of Indemnity, therefore, does not foreclose the Complaint's abuse-of process claim.

Indemnity argues that the Settlement Agreement forecloses any claim based on the current Texas lawsuit because that litigation is "part of, and arises out of, a pattern of conduct that began prior to February 2010." (R. 85 at 6.) This argument fails because Indemnity's filing the Texas lawsuit constitutes a discrete act that occurred after February 19, 2010, and so the release in the Settlement Agreement, by its express terms, does not apply to the same.

**3. The Settlement Agreement Does Not Foreclose Axiom's Lanham Act Claim**

Axiom bases its Lanham Act claim on Indemnity's "misrepresentations to AM Best, DISB, NAIC, and prospective insureds regarding [Indemnity's] financial condition[.]" (R. 21 at 12.) As explained above, most of these alleged misrepresentations preceded the Settlement Agreement. With respect to AM Best, for instance, the Complaint alleges that Indemnity fabricated a letter of credit and reported the same to the rating agency in 2009. (R. 21 at 5-7.) Furthermore, Axiom alleges that Indemnity made misrepresentations to DISB in 2006. (*Id.* at 4-5.) Because these alleged misrepresentations occurred prior to February 19, 2010, the Settlement Agreement bars its Lanham Act claim insofar as Axiom bases that claim on those events. *See, e.g.*, *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116 (7th Cir. 1990) ("'It is well established [that] a general release is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry.'") (quoting *Oberweis*

*Dairy, Inc. v. Associated Milk Producers, Inc.*, 568 F. Supp. 1096, 1101 (N.D. Ill. 1983)); *see also Mercury Cleaning Sys., Inc. v. Manitowoc Eng'g Corp.*, 255 F.3d 318, 320 (7th Cir. 1958) ("If the settlement agreement . . . is a complete release and a bar to plaintiff's claims set out in Count I, then we need look no further.").

Nevertheless, Axiom alleges that the December 31, 2010, financial statements that Indemnity filed with the NAIC improperly identified "$10 million as being on deposit in a Florida bank." (R. 21 at 7.) This representation took place after the Settlement Agreement, which as a result does not preclude Axiom's Lanham Act claim as to Indemnity's December 2010 financial statements.

#### 4. The Settlement Agreement Does Not Bar the Complaint's RICO, Breach-of-Settlement-Agreement, or Declaration Counts

Axiom's RICO claim alleges a pattern of racketeering activities that include Indemnity's "December 31, 2010 NAIC filing" and its "May 6, 2011 letter to Axiom's brokers[.]" (R. 21 at 13-14.) As these actions occurred after February 19, 2010, the Settlement Agreement does not foreclose the Complaint's RICO cause of action. Separately, it should be clear that Axiom's prior release has no application to the counts of "Breach of Settlement Agreement" and "Declaration that Axiom Has Not Breached Settlement Agreement." Indeed, beyond making a blanket assertion to the effect that the Settlement Agreement precludes "all of Axiom's claims," (R. 85 at 4) Indemnity presents no specific argument why the release forecloses the counts for breach of the agreement and for a declaration. Axiom's February 19, 2010, release, therefore, does not bar counts IV and V of the Complaint.

### B. The Complaint Fails to State a Claim for Abuse of Process, but States a Claim for Violation of the Lanham Act, for a RICO Violation, and for Breach of the Settlement Agreement

The fact that Axiom's prior release does not bar its present action against Indemnity does not alone mean that the Complaint satisfies the requirements of Federal Rule of Civil Procedure 8(a). Indemnity argues that the McCarran-Ferguson Act bars Axiom's Lanham Act and RICO claims. (R. 85 at 7-10.) Indemnity further submits that the Complaint's abuse-of-process count fails to state a claim because it does not allege that Indemnity made an illegal, improper, or perverted use of the process by suing Axiom in Texas. (Id. at 10-11.) Finally, Indemnity contends that Count IV fails because it does not allege "which sections, if any, of the Settlement Agreement Indemnity allegedly breached" and that the Court should decline to entertain a declaration for the purpose of Count V because the same issue is currently pending before the U.S. District Court for the District of Maryland. (Id. at 13-15.) For reasons explained below, the Court grants Indemnity's motion to dismiss in part and denies it in part.

#### 1. Axiom's Abuse-of-Process Claim Does Not Satisfy Rule 8

The parties dispute which state's law applies to Axiom's abuse-of-process claim. (R. 85 at 10-12; R. 49 at 4-6.) Axiom maintains that Illinois law applies because that state has the most significant relationship to the events underlying this particular claim, arguing that (1) "Illinois and Delaware are the places that the parties are either organized in or chartered"; (2) "Axiom . . . filed a lawsuit against Indemnity in Chicago in 2009"; (3) the "Settlement Agreement was consummated by an order for dismissal issued by [this Court]"; and that (4) "Axiom then filed this lawsuit against Indemnity in Illinois." (R. 49 at 4-5.)

Axiom is mistaken as to the substantive law governing its specific abuse-of-process

claim, which, uniquely amongst its asserted claims in this case, is particular to Texas. The Restatement (Second) of Conflicts of Laws provides that "[t]he rights and liabilities of the parties for . . . abuse of process are determined by the local law of the state where the proceeding complained of occurred, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 155. The relevant process took place in Texas, and so that state's substantive law applies unless another state has "a more significant relationship." The comment to Section 155 explains that, "[o]n rare occasions, a state other than that where the proceeding complained of occurred will be that of most significant relationship[.]" *Id.* at § 155, comment (b). "In large part, the answer to [the question whether another state has a more-significant relationship] will depend upon whether some other state has a greater interest in the determination of the particular issue than the state where the proceeding complained of occurred." *Id.* Axiom does not provide any plausible reason why Illinois would have a greater interest than Texas in determining whether Indemnity abused the latter state's litigation process. In contrast, Indemnity points out that it and Axiom are "licensed to, and do, conduct insurance related business in Texas," that the other defendants are a Texas corporation and resident, respectively, and that "the conduct at issue in Texas is separate and apart from the conduct at issue in this case." (R. 86.) The Court concludes that Texas substantive law applies to Axiom's abuse-of-process claim, which is distinct from the other counts in the Complaint in that it is concerned with a judicial proceeding in a specific state other than Illinois.

To establish an abuse of process under Texas law, a plaintiff must prove "(1) that the

defendant made an illegal, improper, perverted use of the process; (2) that in so doing the defendant had an ulterior motive or purpose; and (3) that damage resulted to the plaintiff from the irregularity." *Pitts & Collard, LLP v. Schechter*, -- S.W.3d --, 2011 WL 1834813, at *24 (Tex. App. May 12, 2011). "To constitute an abuse of process, the process must have been used to accomplish an end which is beyond the purview of the process and which compels a party to do a collateral thing which he could not be compelled to do. The critical aspect of this tort is the improper use of the process after it has been issued. . . . When the process is used for the purpose for which it was intended, even though accomplished by an ulterior motive, no abuse of process has occurred." *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App. 2008).

Axiom alleges that Indemnity's recent lawsuit against it in Texas constitutes an abuse of process because Indemnity "has an ulterior motive . . . to control the market in which it competes with Axiom." (R. 21 at 11.) The Complaint further alleges that "the Texas Lawsuit is designed to harass Axiom, to cause it economic hardship, and to distract Axiom from the marketplace" and that "[t]he claims . . . are not only untrue, they are frivolous." (*Id.*) These allegations fail to "state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). Axiom's allegations go only to an ulterior motive and do not contain sufficient facts to show a right to relief going beyond the speculative level. Specifically, Axiom alleges no facts showing that Indemnity used the process for a purpose for which it was not intended. (R. 21 at 11.) Texas law is clear that an ulterior motive alone does not demonstrate an abuse of process. *See, e.g.*, *Preston*, 248 S.W.3d at 897. The Court therefore dismisses Axiom's abuse-of-process claim with prejudice.

**2. The Complaint's Lanham Act and RICO Counts State a Claim**

Indemnity argues that the McCarran-Ferguson Act bars Axiom's Lanham Act and RICO claims because they interfere with the Illinois Unfair Methods of Competition and Unfair or Deceptive Acts or Practices Act ("the Unfair Practices Act"). (R. 85 at 7-10.) The McCarran-Ferguson Act provides, in relevant part, that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance[.]" 15 U.S.C. § 1012(b).[5]

Interpreting this language, the Seventh Circuit has explained that "state law 'enacted . . . for the purpose of regulating the business of insurance' preempts federal law of general applicability to the extent the federal law invalidates, impairs, or supersedes the state law." *Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1040 (7th Cir. 1998). The Seventh Circuit has further explained that the Act "creates an exception to this preemption—if the federal law specifically relates to the business of insurance, the federal law may be applied even if it would invalidate, impair, or supersede a state law." *Id.*; *see also Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 563 (7th Cir. 1999) ("Direct conflict with state law is not required to trigger this

---

[5] The parties agree that the Illinois Unfair Practices Act, as opposed to comparable legislation of any other state, applies to the question whether the McCarran-Ferguson Act reverse preempts Axiom's RICO and Lanham Act claims. (R. 85 at 7-11; R. 49 at 6-13.) *See Fednav Int'l v. Cont'l Ins. Co.*, 624 F.3d 834, 839 (7th Cir. 2010) ("In a case such as this one, in which federal court jurisdiction is premised on diversity of citizenship, state law applies to substantive issues. . . . Fednav filed this case in a federal district court in Illinois, and the parties did not raise any conflict of law issue. . . . Accordingly, we look to Illinois law[.]"). The application of Illinois law for the purpose of reverse-preemption analysis in this case is also consistent with—even if it is not compelled by— the dictates of the parties' Settlement Agreement, which provided that the "Agreement shall be governed by . . . the laws of the State of Illinois without regard to conflicts or choice of law principles." (R. 85 at 21.)

prohibition; it is enough if the interpretation would 'interfere with a State's administrative regime.'") (citation omitted).

To determine whether the McCarran-Ferguson Act precludes application of a federal statute—in this case, Axiom's Lanham Act and RICO claims—the Court employs a three-factor test: (a) "does the federal statute at issue 'specifically relate to the business of insurance"; (b) "was the state statute 'enacted . . . for the purpose of regulating the business of insurance"; and (c) "would application of the federal statute 'invalidate, impair, or supersede' the state law." *Id.* at 1040-41.

Applied to this case, the parties correctly agree that the first two factors of the test espoused in *Autry* support a finding that the Act bars Axiom's Lanham Act and RICO claims. (R. 49 at 11; R. 86 at 3.) The Unfair Practices Act provides that "[n]o person shall engage . . . in any trade practice which . . . is determined . . . to be . . . an unfair or deceptive act or practice in the business of insurance." 215 ILL. COMP. STAT. 5/423(1). The parties do not dispute that Indemnity's alleged actions in misrepresenting its capitalization to regulators and committing fraud to insurance rating agencies would, if true, violate the Illinois statute. (R. 85 at 8; R. 49 at 6-13.)

As Axiom frames the issue, then, the remaining question is whether application of the Lanham Act and/or RICO would 'invalidate, impair, or supersede' the Illinois Unfair Practices Act. (R. 49 at 11.) The Supreme Court has held that a federal statute does not impair a state law when it "does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime[.]" *Humana, Inc. v. Forsyth,* 525 U.S. 299, 310 (1999). In that decision, the Supreme Court held

that a RICO action would not impair Nevada law because (1) "Nevada provides both statutory and common-law remedies to check insurance fraud"; (2) the "Nevada Unfair Insurance Practices Act . . . is a comprehensive administrative scheme that prohibits various forms of insurance fraud and misrepresentation"; (3) "[v]ictims of fraud may . . . pursue private actions under Nevada law"; (4) "the Act . . . does not exclude application of other state laws, statutory or decisional"; and (5) the treble-damages provision of the Nevada law meant that plaintiffs could obtain greater damages under that law than they could under RICO. *Id.* at 311-13. The Supreme Court concluded: "[W]e see no frustration of state policy in the RICO litigation at issue here. RICO's private right of action and treble damages provision appears to complement Nevada's statutory and common-law claims for relief." *Id.* at 313.

The Court finds that Axiom's action under the Lanham Act, RICO, or both would not impede the Unfair Practices Act, and thus the McCarran-Ferguson Act does not preclude application of those federal statutes in the present action. The parties agree that the Illinois Unfair Practices Act does not provide for a private cause of action, which distinguishes this case in one respect from *Humana*. (R. 49 at 9; R. 86 at 3.) According to Indemnity, this fact alone requires a finding that the McCarran-Ferguson Act bars Axiom's claims under the Lanham Act and RICO. (R. 85 at 9.)

The Court disagrees. The question whether a state insurance statute permits a private right of action was only one of several factors considered by the Supreme Court in *Humana* for the purpose of reverse-preemption analysis. *Humana*, 525 U.S. at 313. In fact, given the nature of Illinois' Unfair Practices Act, permitting a plaintiff to bring a private action under RICO and/or the Lanham Act would not impair, but would complement, Illinois' insurance regime.

Indeed, the Unfair Practices Act provides: "The powers vested in the Director by this Article shall be additional to any other powers to enforce any penalties, fines or forfeitures authorized by law with respect to the methods, acts and practices hereby declared to be unfair or deceptive." 215 ILL. COMP. STAT. 5/432). Pursuant to this provision, then, a person can bring suit under separate laws based on facts that would also establish a violation of the Unfair Practices Act.

The Court agrees with the majority of the U.S. Courts of Appeals that, unless a state's insurance regime establishes an exclusively administrative remedy, the fact that a state insurance statute does not permit a private cause of action does not preclude a plaintiff from bringing an action under a federal law of general applicability. *See Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 264-68 (3d Cir. 2007) (characterizing "the absence of a private right of action in ITPA as an obstacle to Weiss's claim, but by no means an insurmountable one" and concluding that RICO would not "impair the state regulatory scheme"); *Am. Chiropractic v. Trigon Healthcare Trigon*, 367 F.3d 212, 231-32 (4th Cir. 2004) (observing that "the Virginia insurance laws at issue here . . . did not provide for a private right of action" but holding that "RICO furthers Virginia's interest in policing insurance fraud and misconduct and does not frustrate any declared state policy. Although RICO's damage provisions are admittedly more severe than many state laws, RICO does not interfere with Virginia's administrative scheme. Moreover, . . . although Virginia's insurance laws do not create private rights of action, § 38.2-221 allows for other state laws to apply to the conduct of all insurers. . . . [I]n such a situation, *Humana* compels a conclusion that American Chiropractic's RICO claim was not barred by the McCarran-Ferguson Act."); *Bancoklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1099 (10th Cir. 1999) (same); *see also In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 467 F. Supp. 2d

1071, 1079 (S.D. Cal. 2006) (holding that, "although California may limit certain statutory remedies for certain claims under its insurance code, California still provides for a robust policy in favor of vindicating the rights of private plaintiffs damaged by an insurer's unlawful conduct. Against this backdrop, the court holds that allowing a RICO claim here would not impair, impede, or supersede California law for purpose of McCarran-Ferguson.").

In reply, Indemnity relies on decisions of the U.S. Courts of Appeals for the Sixth and Eighth Circuits. (R. 86 at 4-5.) The first such case is the 2010 decision of *Riverview Health Institute LLC v. Medical Mutual of Ohio*, in which the Sixth Circuit held that Ohio's state regulatory insurance scheme reverse preempted a RICO action in light of the facts that "Ohio's insurance scheme does not afford a private right of action" and that the plaintiffs had "no common law remedies available." *Riverview*, 601 F.3d 505, 517 (6th Cir. 2010). In that case, however, the Sixth Circuit rejected the plaintiff's argument that the Ohio insurance statute was not the exclusive remedy under Ohio law "because Plaintiffs have no common law remedies available, which renders Ohio's Prompt Pay Act Plaintiffs' exclusive source of remedies. Although Plaintiffs cite claims for the tort of bad faith on the part of an insurance company and common law fraud, Plaintiffs have no such viable claims." *Id.* In the present case, by contrast, the Illinois Unfair Practices Act, by its express terms, is not an exclusive administrative regime, but authorizes common-law remedies. 215 ILL. COMP. STAT. 5/432; *cf. Levine v. First Am. Title Ins. Co.*, No. 09-CV-842, 2010 WL 2527681, at *4 (E.D. Pa. June 18, 2010) (exploring "the difference between a statute that provides for no private right of action and a statute that provides for an exclusive administrative remedy"). Furthermore, and as explained below, Axiom has stated a claim for breach of contract based on Indemnity's alleged violation of the Settlement

Agreement, which provides that substantive Illinois law will govern any disputes. (R. 85 at 21.)

Indemnity also relies on the Eighth Circuit's decision in *Saunders v. Farmers Ins. Exch.*, 537 F.3d 961 (8th Cir. 2008). (R. 86 at 4.) In finding that Missouri insurance laws reverse preempted the plaintiffs' action for violation of certain federal civil-rights statutes, the Eighth Circuit did rely, in part, on the fact that "neither the Missouri insurance laws nor Missouri common law provide a private right of action[.]" *Saunders*, 537 F.3d at 968. Nevertheless, the Eighth Circuit made clear that Missouri had "mandat[ed] an exclusively administrative remedy[.]" *Id.* As noted above, this is not the case with respect to Illinois.[6]

For these reasons, the McCarran-Ferguson Act does not reverse preempt Axiom's RICO and Lanham Act claims. *Accord Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 168 (3d Cir. 2001) (holding that the Lanham Act did not impair a state insurance statute that did not authorize a private cause of action because even though the state statute was "enforceable only by the State Commissioner of Insurance and confers no private right of action . . . state law actions for deceit and fraud in connection with the insurance industry are not barred, and are available to provide remedies for victims of illegal insurance practices").

**3. Breach of the Settlement Agreement**

Axiom's Count IV alleges that Indemnity violated the parties' Settlement Agreement "when it reported to DISB and to Liberty Mutual insurance company that Axiom had violated certain District of Columbia insurance regulations" and "when it sent the May 2011 letters." (R.

[6] Indemnity's reliance on *LaBarre v. Credit Acceptance Corp.*, 175 F.3d 640 (8th Cir. 1999) fails for the same reason. There, the Eighth Circuit found that the McCarran-Ferguson Act "barred LaBarre's RICO claims" because "Minnesota law permits only administrative recourse for violations of § 72A.20 and, unlike RICO, does not provide a private cause of action for violations of this provision." *Id.* at 643.

21 at 14-15.) In moving to dismiss this count, Indemnity points out that "Axiom fails to allege facts sufficient to establish which sections, if any, of the Settlement Agreement Indemnity allegedly breached" and further argues that Axiom fails to explain how Indemnity's actions in reporting to DISB and Liberty Mutual constituted a breach of the Settlement Agreement. (R. 85 at 13-14.) Axiom argues in response that the Complaint alleges "all elements necessary to state a claim for breach of the Settlement Agreement." (R. 49 at 13-14.)

Section 12 of the Settlement Agreement provides that the agreement "shall be governed by and interpreted under the laws of the State of Illinois without regard to conflicts or choice of law principles." (R. 85 at 21.) The elements of a breach-of-contract claim in Illinois are "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Assert Exch. II, LLC v. First Choice Bank*, -- N.E.2d --, 2011 WL 2714225, at *7 (Ill. App. Ct. July 12, 2011).

Axiom's breach-of-the-Settlement-Agreement claim satisfies Rule 8. The Complaint identifies, even if it does not recount in detail, the alleged acts that amounted to a violation of the agreement. (R. 85 at 13-14.) These allegations give Indemnity notice of the nature of Axiom's claim. *See, e.g.*, *Moore v. Mahone*, -- F.3d --, 2011 WL 2739771, at *3 (7th Cir. July 15, 2011) ("In a system of notice pleading, the function of the complaint is to alert the defendant to the nature of the plaintiff's claim."). The Court, of course, construes the well-pleaded allegations in the Complaint in the light most favorable to Axiom at the motion-to-dismiss stage. *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492-93 (7th Cir. 2011). The Settlement Agreement provides that the parties "will not . . . . make . . . any statement . . . regarding any other Party which constitutes defamation or disparagement." (R. 85 at 20.) Axiom's allegations that Indemnity

"reported to DISB and to Liberty Mutual insurance company that Axiom had violated certain District of Columbia insurance regulations" (R. 21 at 15) "permit the court to infer more than the mere possibility of misconduct," and so Count IV satisfies "the minimal pleading burden of Rule 8 of the Federal Rules of Civil Procedure[.]" *Gillard v. Nw. Univ.*, 366 Fed. App'x 686, 687 (7th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950). Indeed, the Complaint alleges that Indemnity "has told regulators in Texas, Maryland and elsewhere that Axiom [has] . . . charged below market premiums," that Indemnity did so "with the expectation that the regulators will launch investigations, thereby consuming the time and resources of Axiom," and that "[t]hese allegations are completely false." (R. 21 at 10.) Such allegations are sufficient to state a claim for disparagement or defamation in Illinois.[7]

Ultimately, Indemnity's argument that Count IV fails because Axiom did not "plead how those actions constitute a breach of the Settlement Agreement" would demand more details than the federal rules require. *See, e.g., INEOS Polymers, Inc. v. BASF Catalysts*, 553 F.3d 491, 498 (7th Cir. 2009) ("A complaint will withstand a motion to dismiss if it provides a 'short and plain statement of the claim showing that the pleader is entitled to relief' that is also sufficient to provide the defendant with 'fair notice' of the claim and its basis.") (citation omitted). A

---

[7] In Illinois, "[t]o establish defamation, the plaintiff must show the defendant: (1) made a false statement about the plaintiff; (2) made an unprivileged publication of that statement to a third party; and (3) damaged the plaintiff by publishing the statement." *Goldberg v. Brooks*, 948 N.E.2d 1108, 1113 (Ill. App. Ct. 2011). Separately, the "definition of disparagement" in Illinois consists of a statement that "(1) must be about a competitor's goods or services, (2) must be untrue or misleading, and (3) must have been made to influence or tend to influence the public not to buy those goods or services." *Pekin Ins. Co. v. Phelan*, 799 N.E.2d 523, 526 (Ill. App. Ct. 2003). Indemnity does not argue that Axiom's claim for breach of the Settlement Agreement fails because Axioms' allegations do not satisfy the definition of defamation or disparagement. (R. 85 at *passim*.) Instead, it merely argues that "Axiom fails to state how this action constitutes a breach of the Settlement Agreement." (*Id.* at 14) (emphasis omitted).

plaintiff need not plead all the specific details underlying an alleged breach of contract to state a claim. *See, e.g.*, *Deliver Med Holdings, LLC v. Schaltenbrand*, No. 10-CV-684, 2011 WL 2134343, at *8 (S.D. Ill. May 27, 2011) ("Despite its lack of specifics about the terms of the alleged promises made by the Medicate Parties, Count VI adequately pleads a breach of contract claim . . . . The complaint describes each theory with enough detail to alert the Medicate Parties to what the claims are and the grounds on which they rest. . . . Plausibility simply means that there are 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's claims.") (quoting *Twombly*, 550 U.S. at 556); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09-CV-5619, 2011 WL 1626546, at *2 (N.D. Ill. Apr. 28, 2011) ("Under ordinary circumstances, the Court likely would not require a party making a breach of contract claim to identify the contractual terms on which it relies; alleging the nature of the breach would be enough."). Nor is Indemnity justified in arguing that Illinois law requires Axiom to plead precisely how Indemnity breached the Settlement Agreement. *See, e.g.*, *Ace Hardware Corp. v. Expo Grp., LP*, No. 09-CV-7738, 2011 WL 761554, at *2 (N.D. Ill. Feb. 23, 2011) ("Expo argues that Ace's breach-of-contract claim must be dismissed because Ace has not pled the satisfaction of all conditions precedent to the contract. . . . However, pleading requirements in federal court are governed by federal law rather than state law. . . . Ace's breach-of-contract claim gives Expo fair notice as to the nature of its claim and, therefore, meets [the Rule 8] standard."); *see also Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010) (observing in the context of a claim for breach of contract under Illinois substantive law that "Fednav has stated a claim only if it has alleged enough facts to render the claim facially plausible, not just conceivable.") (citations omitted).

### 4. The Court Declines to Stay Axiom's Sought Declaration that Axiom Has Not Breached the Settlement Agreement

Finally, Indemnity requests that the Court dismiss Axiom's sought declaration that Axiom has not breached the Settlement Agreement. (R. 85 at 14.) Indemnity observes, and Axiom does not dispute, that Indemnity filed an action for breach of the Settlement Agreement in the U.S. District Court for the District of Maryland before Axiom amended its Complaint in this Court to add a count for declaratory judgment that Axiom did not breach the Settlement Agreement. (*Id.*; R. 49 at 14.) Indemnity thus characterizes Axiom's pursuit of a declaration as an attempt to pre-empt the proceeding pending in the district court in Maryland. (R. 85 at 14.)

Axiom points out, however, that its motion to transfer venue is still pending before the Maryland federal district court and so "judicial economy would be served if the court were to defer a decision on Count VI pending the outcome of the Maryland court's ruling on Axiom's Motion to Transfer Venue[.]" (R. 49 at 14-15.) The Court disagrees. In light of the fact that Axiom's claim for breach of the Settlement Agreement is intertwined with its pursuit of the declaration, staying one, but not the other, makes little sense from an efficiency standpoint. *See, e.g.*, *Khadr v. Bush*, 587 F. Supp. 2d 225, 229 (D.D.C. 2008) ("Resolving a motion to stay or to hold a matter in abeyance pending the outcome of a related or parallel proceeding turns upon the unique circumstances of the case, and is largely a matter of discretion for the court. A court may grant such a motion if it finds that 'in the interest of judicial economy and avoiding unnecessary litigation' a stay is appropriate.") (citation omitted).

## II. The Court Denies Indemnity's Motion for Sanctions

Finally, Indemnity has filed a motion for sanctions under Federal Rule of Civil Procedure 11 based solely on the argument that Axiom's claims are frivolous. (R. 59.) As noted above, the

Seventh Circuit has held that courts "may impose Rule 11 sanctions for arguments 'that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose.'" *Indep. Lift*, 202 F.3d at 968-69 (quoting *Fries*, 146 F.3d at 458). Indemnity contends that Axiom's pleadings are baseless, that the Settlement Agreement bars all of Axiom's claims, that those claims independently fail as a matter of law, and that all of "Axiom's material factual allegations are indisputably incorrect." (R. 88 at 1-2, *passim*.)

The Court will not grant Indemnity's motion for sanctions. First, Indemnity's contention that the Settlement Agreement bars this action in its entirety fails on the substantive grounds discussed above. Second, although not all of Axiom's claims satisfy the requirements of Federal Rule of Civil Procedure 8, none of those claims are frivolous. For that reason, sanctions are not presently appropriate for the filing of a frivolous claim. *See, e.g.*, *Hopes v. Dobek*, No. 10-CV-2636, 2011 WL 2909382, at *2 (N.D. Ill. July 18, 2011) ("While the officer's motion for summary judgment was unsuccessful, . . . it was not frivolous or made in bad faith. . . . The Court will not order sanctions in this instance."); *DeBartolo v. Health & Welfare Dep't of the Const. & Gen. Laborers' District Council of Chi. & Vicinity*, No. 09-CV-39, 2011 WL 1131110, at 13 (N.D. Ill. Mar. 28, 2011) ("Although this Court finds that the Plaintiff's claims were not substantially justified under ERISA . . . the claims were not so obviously frivolous or objectively unreasonable as to warrant Rule 11 sanctions."); *Solorzano v. Railway & Indus. Servs., Inc.*, No. 09-CV-3733, 2010 WL 234972, at *2 (N.D. Ill. Jan. 15, 2010) ("Just as there is a difference between regular violations of the FMLA and willful ones, so there must be a difference between dismissed complaints and complaints whose frivolous nature require the imposition of Rule 11 sanctions.").

**CONCLUSION**

For these reasons, Indemnity's and Cohen's motions to dismiss (R. 26; R. 39) are granted in part and denied in part; and Indemnity's motion for sanctions (R. 59) is denied. The Court declines to stay "Count V" of the Complaint, seeking a declaration that Axiom has not breached the Settlement Agreement, pending the outcome of the related proceeding in the U.S. District Court for the District of Maryland. Furthermore, in light of Axiom's request (R. 49 at 13), the Court dismisses Axiom's claim for tortious interference, without prejudice.

**Dated:** September 1, 2011

**ENTERED**

______________________________
**AMY J. ST. EVE**
**United States District Court Judge**